PAGES 1 - 30

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE D. LOWELL JENSEN, JUDGE

UNITED STATES OF AMERICA,      )
                               )
              PLAINTIFF,       )   NO. CR-08-0244 DLJ
                               )
  VS.                          )
                               )   FRIDAY, JUNE 19, 2009
JOSEPH LAWRENCE WILLIAMS,      )
WILLIAM JOSEPH LITTLE, JR.,    )
AND KEITH AARON VANN,          )   OAKLAND, CALIFORNIA
                               )
                               )
              DEFENDANTS.      )
_____)

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF:**            JOSEPH P. RUSSONIELLO, ESQUIRE
                             UNITED STATES ATTORNEY
                             1301 CLAY STREET, SUITE 340S
                             OAKLAND, CALIFORNIA  94612
                        BY:  STEPHEN CORRIGAN,
                             ASSISTANT UNITED STATES ATTORNEY


**FOR DEFENDANT**            GREEN & GREEN
**JOSEPH WILLIAMS:**         155 MONTGOMERY STREET, STE. 901
                             SAN FRANCISCO, CALIFORNIA 94104
                        BY:  GERI GREEN, ESQUIRE


**FOR DEFENDANT**            CLAIRE LEARY, ESQUIRE
**WILLIAM LITTLE:**          912 COLE STREET, STE. 347
                             SAN FRANCISCO, CALIFORNIA 94117


**FOR DEFENDANT**            STIGLICH & HINCKLEY
**KEITH VANN:**              502 7TH STREET
                             SAN FRANCISCO, CALIFORNIA  94103
                        BY:  LIDIA STIGLICH, ESQUIRE


**REPORTED BY:**             DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                             OFFICIAL COURT REPORTER

| | |
|---|---|
| 1 | <u>FRIDAY, JUNE 18, 2009</u>                                    <u>11:20 A.M.</u> |
| 2 | |
| 3 |    **THE CLERK:**  CALLING CRIMINAL ACTION 08-00244 UNITED |
| 4 | STATES VERSUS JOSEPH LAWRENCE WILLIAMS, WILLIAM JOSEPH LITTLE, |
| 5 | AND KEITH AARON VANN. |
| 6 |    COUNSEL, PLEASE COME FORWARD AND STATE YOUR |
| 7 | APPEARANCES. |
| 8 |    **MR. CORRIGAN:**  GOOD MORNING, YOUR HONOR, STEPHEN |
| 9 | CORRIGAN FOR THE UNITED STATES. |
| 10 |    **MS. GREEN:**  GOOD MORNING, YOUR HONOR, GERI GREEN ON |
| 11 | BEHALF OF MR. WILLIAMS, WHO IS PRESENT OUT OF CUSTODY. |
| 12 |    **MS. LEARY:**  GOOD MORNING, YOUR HONOR, I'M CLAIRE |
| 13 | LEARY.  I REPRESENT MR. LITTLE, AND MR. LITTLE'S APPEARANCE HAS |
| 14 | BEEN WAIVED FOR NONEVIDENTIARY HEARINGS. |
| 15 |    **MS. STIGLICH:**  GOOD MORNING, YOUR HONOR, LIDIA |
| 16 | STIGLICH ON BEHALF OF MR. VANN.  HE IS PRESENT. |
| 17 |    **THE COURT:**  OKAY. |
| 18 |    ALL RIGHT.  YOU CAN SIT DOWN IF YOU WANT.  THE |
| 19 | DEFENDANTS CAN SIT DOWN.  THE LAWYERS HAVE TO STAND. |
| 20 |    ALL RIGHT.  WE HAVE TWO BASIC MOTIONS.  ONE IS FOR A |
| 21 | BILL OF PARTICULARS WITH REFERENCE TO THE CHARGES THAT EXIST IN |
| 22 | THIS CASE.  THE OTHER IS FOR WHAT APPEARS TO BE ENFORCING A |
| 23 | PLEA AGREEMENT. |
| 24 |    **MS. LEARY:**  YOUR HONOR, I ASKED THAT MY MOTION BE |
| 25 | HELD IN ABEYANCE AND THAT I BE ABLE TO SUPPLEMENT IT LATER.  SO |

1    AT THE END OF THIS, I WILL TALK TO YOUR HONOR AND ASK FOR A NEW

2    DATE FOR FILING AN AMENDED AND SUPPLEMENTED MOTION, BUT WE ARE

3    NOT DONE WITH THE BRIEFING ON THAT ONE YET.

4              **THE COURT:**  YOU PROBABLY SHOULD SUPPLEMENT IT.

5    OKAY.

6              LET'S HEAR ABOUT THE MOTION ON THE BILL OF

7    PARTICULARS.

8              **MS. GREEN:**  OKAY, YOUR HONOR.  I HAVE REVIEWED THE

9    INDICTMENT AND THE DISCOVERY PROVIDED BY THE GOVERNMENT, AND I

10   HAVE GONE AND GOTTEN THE ESTATE FILE IN THIS CASE AND REVIEWED

11   IT.  AND I HAVE --

12             **THE COURT:**  WHEN YOU SAY STATE FILE, THE CIVIL CASE?

13             **MS. GREEN:**  I MEAN THE PROBATE ESTATE, THE PROBATE

14   FILES THAT KIND OF GOVERNED WHAT THE ESTATE DID AND --

15             **THE COURT:**  THAT'S FINE.  ALL RIGHT.

16             **MS. GREEN:**  AND I HAVE BEEN RACKING MY BRAIN TRYING

17   TO FIGURE OUT WHAT'S REALLY GOING ON HERE.

18             FINALLY, THANKFULLY, THE GOVERNMENT HAS GIVEN US

19   MR. EICHEN'S LETTER, WHICH IS EXHIBIT 1, AND THAT LETTER

20   CLARIFIES SOME THINGS, BUT RAISES OTHER ENORMOUS QUESTIONS.

21   THAT LETTER IN PARAGRAPH 3 STATES THAT CHARITABLE DONATIONS

22   UNDER SECTION 2055 MUST BE PASSED FROM THE ESTATE OR A WILL OR

23   A TRUST OR OTHER DISPOSITIVE INSTRUMENT, WHICH WOULD INDICATE

24   THAT THE TESTATOR MUST HAVE INTENDED TO AND EXPRESSED THAT

25   INTENT --

1        **THE COURT:**  THAT'S WHAT I READ THAT ALSO.  IT RAISES

2    THE ISSUE IN TERMS OF DOES THE DEDUCTION BECOME AVAILABLE

3    BECAUSE IT WAS A PART OF THE DECISION BY THE DECEASED AS

4    OPPOSED TO THE HEIRS.

5        **MS. GREEN:**  WHICH COULD HAVE --

6        **THE COURT:**  BUT THEN IT ALSO HAS A PARAGRAPH IN

7    THERE ABOUT FIDUCIARIES.  AND I DIDN'T KNOW WHETHER I

8    UNDERSTOOD THAT AS BEING A FIDUCIARY BEING AN HEIR.  I'M NOT

9    SURE.  BECAUSE YOU CAN HAVE THIS IN DIFFERENT KIND OF

10   SCENARIOS, BUT IT LOOKED AS THOUGH WHAT THIS WAS WAS AN ATTEMPT

11   TO HAVE THE ESTATE EFFECTED BY THE DEDUCTION BEING APPLIED TO

12   IT, AND THE LETTER SAYS YOU CAN'T DO THAT UNLESS IT IS A PART

13   OF THE WILL ITSELF.  AND IT WASN'T, THEREFORE, YOU CAN'T DO IT.

14       **MS. GREEN:**  EXACTLY.  SO MY QUESTION, YOUR HONOR, IS

15   OTHER PARTS OF THE INDICTMENT AND THE RESPONSE BY THE

16   GOVERNMENT INDICATE THAT GLOBAL MISSIONS DID NOT APPLY FOR AND

17   RECEIVE IT'S NON -- IT'S TAX EXEMPT STATUS FROM THE IRS.

18   HOWEVER, WHAT FAILS TO BE SAID IS THAT THERE'S NO REQUIREMENT,

19   THE IRS DOES NOT REQUIRE THAT A CHURCH OR CHURCH ORGANIZATION

20   MAKE THAT APPLICATION OR RECEIVE --

21       **THE COURT:**  THAT ISN'T REALLY THE GIST OF THE

22   INDICTMENT.  THE INDICTMENT IS THAT THIS IS SIMPLY A PART OF A

23   FRAUDULENT SCHEME, AND THAT PART OF THE FRAUDULENT SCHEME IS

24   BASED UPON MISREPRESENTATIONS AS TO THE AVAILABILITY OF THE

25   DEDUCTION.  AND THE ISSUE WOULD BE WHETHER OR NOT THERE WAS A

1    MISREPRESENTATION, NOT WHAT THE TAX PEOPLE DO.  AND SO IF THERE

2    IS A MISREPRESENTATION, THEN THAT IS THE FRAUDULENT SCHEME.

3            **MS. GREEN:**  I UNDERSTAND, YOUR HONOR.  WHAT HAS

4    NEVER BEEN MADE CLEAR IS WHAT THAT MISREPRESENTATION, WHAT

5    MATERIAL MISREPRESENTATION -- ESPECIALLY IN LIGHT OF THE FACT

6    THAT EVEN IF THESE, IF THE ESTATE DONATED THE PROPERTY TO THE

7    RED CROSS, THEY COULD NOT HAVE RECEIVED A DEDUCTION.  WHAT,

8    BECAUSE OF SECTION 2055 --

9            **THE COURT:**  BECAUSE IT WASN'T IN THE WILL.

10           **MS. GREEN:**  RIGHT.  SO WHAT MATERIAL

11   MISREPRESENTATIONS DID THESE PEOPLE MAKE TO THE ESTATE?

12           **THE COURT:**  NOT TO THE -- THE ESTATE, YOU MEAN, THE

13   HEIRS.

14           AS I UNDERSTAND THE GOVERNMENT'S POSITION IS THAT

15   ONE OF THE REPRESENTATIONS THAT WAS A PART OF THE FRAUDULENT

16   SCHEME WAS TO INDUCE THE DONATION ON THE GROUNDS THAT IT WAS AN

17   AVAILABLE DEDUCTION, AND THAT THAT WAS THE -- IS A PART OF THE

18   REASON THAT THE DONATION WAS BEING MADE.  THAT IS A

19   MATERIALITY.

20           THE FALSITY IS THAT IT WAS KNOWN THAT IT WAS NOT

21   AVAILABLE AS A DEDUCTION.  THERE WAS NO STATE OF MIND THAT IT

22   WAS AN AVAILABLE DEDUCTION.  THE ALLEGATION IS THAT THEIR

23   REPRESENTATION WAS THAT YOU WILL GET A DEDUCTION IF YOU DO A,

24   B, C AND THAT'S FALSE.  THEY KNEW IT WAS NOT, AND THEN INDUCED

25   THE INVESTMENT OR THE DONATION.

1          **MS. GREEN:**  SO, IS THE COURT --

2          **THE COURT:**  I AM JUST ASKING THIS OF COUNSEL.

3          **MS. GREEN:**  MY QUESTION IS, THERE'S A BIG LEAP

4     BETWEEN WE ARE A TAX EXEMPT ORGANIZATION AND YOU WILL RECEIVE A

5     DEDUCTION REGARDLESS OF WHAT --

6          **THE COURT:**  THE EVIDENCE MAY SAY, BUT I'M NOT SURE

7     THAT HAS ANYTHING REALLY TO DO WITH IT.  IT IS THE STATE OF

8     MIND OF THE ACTOR WHO IS MAKING THE FALSE REPRESENTATION RATHER

9     THAN THE STATE OF MIND OF THE TAX PEOPLE.

10          **MR. CORRIGAN:**  THAT'S OUR POSITION.  AND OUR

11     POSITION, TOO, IS THAT THE INDICTMENT IS VERY CLEAR.  WE HAVE

12     OUTLINED SEVERAL FALSE MISREPRESENTATIONS.

13          **THE COURT:**  IT STATES THAT SPECIFICALLY IN THE

14     INDICTMENT.  IT STATES THAT SPECIFICALLY AS A FALSE STATEMENT.

15          **MS. GREEN:**  IT DOES NOT STATE WHAT THE TAX ADVICE

16     WAS.  WAS THE TAX ADVICE THAT WE ARE A TAX EXEMPT ORGANIZATION?

17     WAS THE TAX ADVICE EVEN THOUGH THE WILL DOESN'T STATE THAT YOU

18     ARE TO DONATE IT TO US, IT'S OKAY YOU CAN DONATE IT TO US?

19     WHAT EXACTLY IS THE FALSE MISREPRESENTATION THAT INDUCED THE

20     DONATION?

21          **MR. CORRIGAN:**  THEY ARE IDENTIFIED IN THE MEANS AND

22     METHODS OF THE CONSPIRACY ON PAGE 3 OF THE INDICTMENT, YOUR

23     HONOR.

24          **THE COURT:**  ALL RIGHT.

25          **MR. CORRIGAN:**  IT SAYS, DEFENDANTS FALSELY

1  REPRESENTED TO PROSPECTIVE DONORS, AND THE DONORS WOULD BE

2  DEFENSE KNOWS AND THE GOVERNMENT HAS PRODUCED PLENTY OF

3  INFORMATION ABOUT WHO THEY ARE AND WHAT ROLE THEY PLAYED,

4  DONATIONS TO GLOBAL, WHICH WAS THE BUSINESS OF THE DEFENDANTS,

5  WERE TAX DEDUCTIBLE AND COULD BE APPLIED BOTH TO THE DONOR'S

6  TAXES DUE AND OWING AND TO FUTURE IRS TAX LIABILITIES.  AND

7  THEN IT GOES ON TO A SERIES OF ONE, TWO, THREE, FOUR, FIVE

8  MISREPRESENTATIONS THERE.

9          AND C IS ANOTHER MISREPRESENTATION.

10         **THE COURT:**  THAT'S ONE, TWO, THREE, FOUR, AND FIVE

11  ARE ALL FALSE REPRESENTATIONS THAT IF YOU THINK OF THEM IN

12  TERMS OF THEIR ABILITY TO MATERIALLY TO CAUSE AND BE SOMETHING

13  THAT IS RELIED UPON BY THE VICTIM IS THAT THEY ALL HAPPENED

14  BEFORE THE DONATION.

15         WHEN YOU GET DOWN TO C, IT'S SOMETHING THAT HAPPENS

16  AFTER THE DONATION, AND IT ISN'T CLEAR AS TO WHETHER THE

17  THEORIES OF THE GOVERNMENT IS WHETHER THERE WAS ANOTHER THEFT

18  AND ANOTHER SCHEME THAT WAS INVOLVED IN C MISREPRESENTATION, OR

19  WAS IT --

20         **MR. CORRIGAN:**  NO, I THINK IT IS AN ONGOING

21  CONSPIRACY AND THE LAW ALLOWS FOR THAT.  THE LAW ALLOWS FOR THE

22  CONTINUATION AND OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

23  WHEN YOU HAVE LULLING, ACTS OF LULLING.  AND THIS IS --

24         **THE COURT:**  THAT MAY BE, BUT THE QUESTION IS WHETHER

25  OR NOT THE THEFT OR THE CONTEMPLATED THEFT HERE IS TO INDUCE

1   THE DONATION AND MISREPRESENTATIONS IN ORDER TO INDUCE THE

2   DONATION.  ONCE THAT'S ALL DONE, THEN THAT CRIME HAS BEEN

3   COMPLETED IN TERMS OF MAIL FRAUD IF THERE'S MAILINGS OR WIRE

4   THAT GOES ALONG WITH THAT FRAUDULENT SCHEME.  BUT ONCE THAT

5   HAPPENS, IT'S ALL OVER AS FAR AS THE THEFT IS CONCERNED.

6           **MR. CORRIGAN:**  WELL --

7           **THE COURT:**  THEN IF THERE IS LULLING AFTER THAT,

8   THAT'S NOT A NEW CHARGE.

9           **MR. CORRIGAN:**  RIGHT.  IT'S PART OF THE CONSPIRACY

10   OR PART OF THE SCHEME TO DEFRAUD.

11           **THE COURT:**  RIGHT.

12           **MR. CORRIGAN:**  THE GOVERNMENT AGREES WITH THE COURT

13   THAT THE THEFT HAS BEEN COMPLETED, BUT THE SCHEME IS ONGOING.

14           **THE COURT:**  SO THE WAY IT'S PLEADED, IT DOES NOT

15   STATE A SEPARATE FALSE, FRAUDULENT SCHEME THAT TAKES PLACE

16   AFTER THE DONATION HAD BEEN COMPLETED.  SO IT'S PART OF THE

17   ORIGINAL SCHEME --

18           **MR. CORRIGAN:**  THAT'S CORRECT.

19           **THE COURT:**  -- DISTINCT SCHEME, AND IT COULDN'T BE

20   THAT IF YOU CAN'T SHOW THAT THE ORIGINAL DONATION WAS

21   FRAUDULENT, THAT THIS IS ENOUGH TO SHOW A FRAUDULENT OR A

22   CRIME.

23           **MR. CORRIGAN:**  WELL, THE GOVERNMENT WOULD DISAGREE

24   WITH THAT.  I THINK THAT -- AND, AGAIN, IT'S A SITUATION, AS I

25   MENTIONED IN THE PAPERS, THAT THE GOVERNMENT WOULD HAVE TO MEET

1   THE ELEMENTS OF THE OFFENSE.  AND IF WE CAN MEET --

2         **THE COURT:**  THAT'S CORRECT.

3         **MR. CORRIGAN:**  -- THE ELEMENTS OF THE OFFENSE, AND

4   THE LAW SUPPORTS THE NOTION THAT EVEN AFTER THE MONEY IS

5   DONATED, THAT THE EFFORTS ON THE PART OF THE DEFENDANTS, THAT

6   THEY MAKE MATERIAL MISREPRESENTATIONS, A PART OF THAT SCHEME

7   AND THE REST OF THE ELEMENTS ARE MET, THEN THE GOVERNMENT'S

8   POSITION WOULD BE WE COULD PROVE THAT THE CRIME --

9         **THE COURT:**  I DON'T THINK YOU HAVE CHARGED A

10   FRAUDULENT SCHEME THAT SAYS EVEN IF THERE WAS A LAWFUL DONATION

11   AND THERE WAS NO FRAUD ACCOMPLISHED BY INDUCING THAT DONATION,

12   THAT THERE COULD BE ANOTHER, A NEW FRAUDULENT SCHEME THAT IS

13   SET IN PLACE BY THE LAWFUL DONATION BEING THERE AND NOT BEING

14   RETURNED.

15         **MR. CORRIGAN:**  I AGREE THAT WE HAVE NOT CHARGED THAT

16   IN THAT RESPECT.

17         **THE COURT:**  OKAY.  ALL RIGHT.

18         **MS. GREEN:**  YOUR HONOR, I AM STILL, ACTUALLY, MYSELF

19   STUCK ON NUMBER ONE, WHICH IS DONATIONS TO GLOBAL TAX

20   DEDUCTIBLE AND COULD BE APPLIED TO BOTH DONOR'S TAX THAT'S DUE

21   AND OWNING, AND TO FUTURE TAX LIABILITIES.

22         WELL, IF THE DONATION -- IF THE ESTATE QUALIFIED FOR

23   A TAX DEDUCTION, IT IS POSSIBLE THEY COULD HAVE OBVIATED FUTURE

24   TAX LIABILITY, TAX LOSS CARRY FORWARD THAT COULD BE APPLIED TO

25   AN ESTATE.

1          THE DONATIONS TO GLOBAL; IS THE QUESTION WHETHER

2   GLOBAL IS A PROPER TAX ORGANIZATION OR IS THE QUESTION THAT MY

3   CLIENTS SAID SOMETHING THAT WAS ERRONEOUS RELATED TO TAX

4   ADVICE?

5          **THE COURT:**  WHAT'S PLED HERE IS THAT YOUR CLIENT

6   MADE A FALSE REPRESENTATION OR IS RESPONSIBLE FOR A FALSE

7   REPRESENTATION, THAT IS, A FALSE REPRESENTATION THAT ANY

8   DONATION WOULD BE TAX DEDUCTIBLE TO EITHER OWING TAXES OR

9   FUTURE TAXES.  THAT'S WHAT'S ALLEGED HERE.

10          THEY WOULD BE REQUIRED TO PROVE, TO SHOW THE

11   EXISTENCE OF THE SCHEME THAT THERE, IN FACT, WERE

12   REPRESENTATIONS THAT WERE MADE THAT SUPPORT THAT SCHEME, AND

13   THEN THEY HAVE TO SHOW WHATEVER IT IS, MAILING OR WIRE, THAT IS

14   IN FURTHERANCE OF THAT TO SHOW A SPECIFIC DRAWING.  BUT THEY

15   HAVE TO PROVE THERE WAS A FRAUDULENT SCHEME THAT INDUCED THE

16   DONATION.

17          SO, IT DOESN'T MATTER WHAT THEIR EXEMPT STATUS IS.

18   IT DOESN'T MATTER WHETHER IT IS A CHURCH.  IT DOESN'T MATTER

19   WHETHER IT'S AN ORGANIZATION.  ALL THAT IS IS SIMPLY A FUNCTION

20   OF WHETHER OR NOT THEY MADE A FALSE REPRESENTATION AND IS THE

21   BACKGROUND FOR THE FALSE REPRESENTATION.

22          AND THEY HAVE TO PROVE THAT THE REPRESENTATION WAS

23   MADE, AND THEY HAVE TO PROVE THAT THERE IS SCIENTER, AND THEY

24   HAVE TO PROVE AN INTENT TO DEFRAUD THAT WENT ALONG WITH IT, BUT

25   IT HAS TO DO WITH THOSE REPRESENTATIONS AND THAT INDUCED

1   DONATION RATHER THAN A TAX CASE.  IT'S NOT A TAX CASE.

2           **MS. GREEN:**  SO THE ISSUE HERE IS WHETHER OR NOT MY

3   CLIENT SAID THIS WAS -- WHETHER IT IS SAYING THIS WOULD BE A

4   TAX DEDUCTIBLE DONATION, THAT'S THE SUM TOTAL.

5           **THE COURT:**  THAT IS THE ALLEGATION THE GOVERNMENT

6   MAKES.

7           **MS. GREEN:**  IS THAT -- IF THAT IS WHAT THE

8   ALLEGATION IS, THAT CLARIFIES A LOT.  THEN WE DON'T HAVE TO

9   DEFEND WHETHER OR NOT WE ARE A CHURCH, WHETHER OR NOT WE'RE A

10  TAX EXEMPT ORGANIZATION.  IS THAT WHAT THE COURT'S --

11          **THE COURT:**  I THINK THAT THAT'S WHAT THE

12  GOVERNMENT'S POSITION IS.

13          **MR. CORRIGAN:**  THE INDICTMENT SPEAKS FOR ITSELF.  I

14  AM NOT HERE TO INTERPRET FOR THE DEFENSE WHAT THE --

15          **THE COURT:**  THE COURT TAKES THE INDICTMENT AS BEING

16  AN ALLEGATION OF A MAIL FRAUD AND A WIRE FRAUD, AND A SCHEME TO

17  ACCOMPLISH A FRAUD.  AND THE FRAUD THAT IS THE SCHEME IS TO

18  INDUCE A DONATION FROM THE VICTIMS.  AND I DON'T KNOW WHY YOU

19  DON'T GIVE THE NAMES OF THE VICTIMS.

20          **MR. CORRIGAN:**  WELL --

21          **THE COURT:**  THIS BIT ABOUT JOHN S.

22          **MR. CORRIGAN:**  THERE IS NO REASON FROM THE

23  GOVERNMENT'S PERSPECTIVE TO PUT IT IN A PUBLIC DOCUMENT.  THE

24  DEFENSE IS CLEARLY, WE PROVIDED PLENTY OF DISCOVERY THAT

25  IDENTIFIES THESE PEOPLE.  THERE HAVE BEEN LAWSUITS GOING BACK

1   AND FORTH --

2            **THE COURT:**  THAT'S RIGHT.

3            **MR. CORRIGAN:**  -- THROUGHOUT THE --

4            **THE COURT:**  I THINK THAT'S RIGHT, BUT I DON'T KNOW

5   WHAT IN THE WORLD CREATES SOME SORT OF CONFIDENTIALITY FOR THE

6   NAME OF THE VICTIMS.

7            **MR. CORRIGAN:**  IT'S ONLY CONFIDENTIAL IN RESPECT

8   THAT THIS IS IN A PUBLIC DOCUMENT.

9            **THE COURT:**  IT IS A PUBLIC DOCUMENT WHEN YOU FILE A

10  LAWSUIT.  BUT I DON'T KNOW, I HAVE NEVER HEARD OF A PROBLEM

11  ABOUT THE GOVERNMENT CAN'T NAME WHO THE VICTIMS ARE.

12            **MR. CORRIGAN:**  WE HAVE FOR PURPOSES OF THE DEFENSE.

13  CERTAINLY THERE IS NO SURPRISE.  WE PROVIDED THEM --

14            **THE COURT:**  BUT THEY ARE NOT MINORS AND THEY ARE NOT

15  SOMETHING WHERE THE NAME CARRIES SOME OBLOQUY, IT'S JUST A

16  NAME.  I DON'T KNOW IF THERE IS ANY ISSUE ABOUT IT.  IT IS

17  CURIOUS TO ME THAT WE HAVE A DEGREE OF CONFIDENTIALITY BY NOT

18  NAMING WHO THE VICTIM IS.

19            OKAY.

20            **MS. GREEN:**  WELL, YOUR HONOR, ON THAT NOTE, IS IT

21  THE COURT'S POSITION THAT WE ARE ENTITLED TO KNOW WHO MADE THE

22  MATERIAL MISREPRESENTATION AND TO WHOM?

23            **THE COURT:**  THAT'S GOING TO HAVE TO BE WHAT THEY

24  PROVE.  THE QUESTION IS WHETHER OR NOT THAT'S ENOUGH DISCOVERY

25  PUTS US IN A POSITION WHERE YOU KNOW WHAT ARE THE ISSUES IN

1    TERMS OF WHO IT IS THAT DID IT.

2              LIKE, IF THERE WAS A SPECIFIC FALSE REPRESENTATION,

3    THAT SHOULD BE A PART OF THE DISCOVERY.

4              **MS. GREEN:**  THAT'S THE PROBLEM, YOUR HONOR, THERE IS

5    NO SPECIFIC FALSE MISREPRESENTATION RELATED TO WHAT INDUCED THE

6    DONATION.  THE DISCOVERY, FOR THE MOST PART, POST-DATES THE

7    DONATION.  SO THIS IS THE REASON FOR THE BILL OF PARTICULARS IN

8    LARGE PART TO FIGURE OUT IF THERE WAS A FRAUD IN THE INDUCEMENT

9    OF THE DONATION.

10             **THE COURT:**  THAT'S WHAT IS PLED HERE.  I DON'T THINK

11   THERE IS ANY QUESTION ABOUT THAT; IS THAT THE PLEADING IS THAT

12   THERE WAS A FRAUDULENTLY INDUCED DONATION.  THAT WAS THE

13   SCHEME.  THEN THEY HAVE TO PROVE THAT.  THEY HAVE TO PROVE IT.

14   THEY HAVE TO GIVE YOU DISCOVERY THAT IS RELATED TO HOW ARE THEY

15   GOING TO PROVE THAT ONE OF THE DEFENDANTS MADE A FALSE

16   REPRESENTATION?  THAT'S PART OF THEIR DISCOVERY PROCESS.

17             I THINK THERE IS DISCOVERY THAT'S BEING PRESENTED

18   THAT COVERS THESE.

19             **MR. CORRIGAN:**  THERE IS, YOUR HONOR.  THERE ARE ALSO

20   OVERT ACTS THAT COVER THIS.  THE GOVERNMENT HAS PROVIDED, I

21   DON'T KNOW HOW MANY HUNDREDS OF PAGES OF DOCUMENTS.  WE

22   PROVIDED FULL DISCOVERY.  WE HAVE NOT PROVIDED, AS OF YET, THE

23   JENCKS ACT MATERIALS.  THAT WILL PROVIDE ADDITIONAL

24   INFORMATION.

25             **MS. GREEN:**  YOUR HONOR?

1          **THE COURT:**  I LISTEN TO THAT --

2          **MR. CORRIGAN:**  I DON'T THINK THAT IS TRUE.  I THINK

3   WE HAVE PROVIDED A LOT OF JENCKS ACT MATERIALS.  WE HAVEN'T

4   PROVIDED ALL OF THE JENCKS ACT MATERIALS.

5          **THE COURT:**  OKAY, BUT I THINK YOU HAVE TO PROVIDE

6   ANYTHING THAT YOU ARE GOING TO BE USING AS A STATEMENT THAT WAS

7   MADE BY ONE OF THE DEFENDANTS.

8          **MR. CORRIGAN:**  WE HAVE DONE THAT.  THAT CLEARLY HAS

9   BEEN PROVIDED.

10          **MS. GREEN:**  YOUR HONOR, I AM UNAWARE OF ANY

11   STATEMENT PRECEDING THE DONATION THAT ANY OF THE DEFENDANTS

12   MADE WHICH IS WHAT THE PROBLEM -- THE QUESTION I HAVE.

13          **MR. CORRIGAN:**  ONE OF THE PROBLEMS IS, I DON'T THINK

14   THE DEFENSE KNOWS ACTUALLY WHAT HAS BEEN PRODUCED.  THE

15   DOCUMENT WE PROVIDED IN EXHIBIT 1 WAS A DOCUMENT THAT WAS

16   PRODUCED MANY MONTHS AGO TO THE DEFENSE.  THIS IS NOT A NEW

17   DOCUMENT THAT WE JUST PRODUCED NOW, THAT STATEMENT FROM RICHARD

18   EICHEN FROM THE IRS.

19          MAYBE IT'S A SITUATION WHERE WE HAVE TO GO BACK AND

20   LOOK AT EXACTLY WHAT HAS BEEN PRODUCE AND KNOW WHAT IS THERE.

21          THE GOVERNMENT HEARS WHAT THE COURT HAS TO SAY, AND

22   TO THE EXTENT THAT WE CAN SUPPLEMENT WHAT WE PROVIDED AND

23   CLARIFY SOME OF THESE ISSUES, WE WILL DO SO.

24          **THE COURT:**  THIS HAS ALWAYS BEEN ONE OF MY

25   INTERESTING ASPECTS OF BECOMING FAMILIAR WITH THE FEDERAL

1    PRACTICE.  THE FEDERAL PRACTICE, WE'RE STANDING HERE TALKING

2    ABOUT, WELL, WE DON'T KNOW WHAT THAT IS.  IN THE STATE

3    PRACTICE, WE HAVE ALREADY HAD A HEARING ON IT AND SOMEBODY

4    KNOWS WHAT IT IS.  BUT FEDS DON'T DO THAT.

5                **MR. CORRIGAN:**  I AM NOT SURE THAT THAT'S TRUE.  I

6    THINK IN THIS CASE WE HAVE PRODUCED THAT.

7                **THE COURT:**  OKAY.  I DON'T THINK YOU ARE REQUIRED TO

8    PRODUCE ALONG WITH THE UNDERLYING ORIGINAL MATERIAL.  YOU ARE

9    NOT SUPPOSED TO BE REQUIRED TO PRODUCE HOW YOU ARE GOING TO

10   PRODUCE AT TRIAL AS A TRIAL BRIEF.  YOU SHOULD BE ABLE TO

11   FIGURE THAT OUT.  I AM NOT GOING TO ORDER THAT.

12               **MS. GREEN:**  NO, NO.  YOUR HONOR, THE REASON I AM

13   STANDING HERE IS BECAUSE I DO NOT KNOW AFTER READING THOUSANDS

14   OF PAGES WHAT THE MATERIAL MISREPRESENTATION MY CLIENT OR ANY

15   OF THE DEFENDANTS MADE TO INDUCE THE DONATION.  THERE IS A

16   WHOLE LOT OF DISCOVERY ABOUT WHAT HAPPENED AFTER THE DONATION.

17               **THE COURT:**  SEE, I DON'T KNOW -- BUT IF THE THESIS

18   IS THAT THE PLEADING DOESN'T TELL YOU WHAT IT IS THAT IS ON

19   TRIAL, THEN I DON'T REALLY AGREE WITH THAT.  IT DOES.

20               BUT IF THEY CAN'T PROVE IT, IF THEY CAN'T -- IF THEY

21   DON'T HAVE REPRESENTATIONS THAT ARE GOING TO BE -- THAT

22   SOMEBODY IS GOING TO TESTIFY TO IN SOME FASHION AS TO WHAT THAT

23   IS, FROM THE VICTIM, FOR EXAMPLE, THIS IS WHAT THEY TOLD ME,

24   THEN THEIR CASE GOES.

25               BUT THAT'S ONE OF THE PROBLEMS, IS I DON'T HAVE AN

1   ABILITY TO ASSESS THAT CASE BY HAVING A SUMMARY JUDGMENT MOTION

2   OR SOMETHING OF THAT NATURE, IT IS A PART OF THE TRIAL.

3          **MS. GREEN:**  MAYBE, MS. LEARY --

4          **MS. LEARY:**  YOUR HONOR, IF WE LOOK AT NUMBER TWO, IF

5   THE IRS DID NOT CREDIT THE DONORS WITH A TAX DEDUCTION IN THE

6   FULL AMOUNT OF THE DONATION, THE DEFENDANTS WOULD RETURN TO THE

7   DONORS THEIR CONTRIBUTION.  I, TOO, HAVE --

8          **THE COURT:**  THAT'S SUPPOSED TO BE A FALSE

9   REPRESENTATION.

10         **MS. LEARY:**  I UNDERSTAND THAT THAT'S THE ALLEGATION,

11   BUT I, TOO, HAVE GONE THROUGH THOUSANDS OF PAGES.  I HAVE NOT

12   SEEN A STATEMENT FROM THE VICTIM THAT SAYS -- I ASSUME THAT

13   THAT'S WHO MADE THAT STATEMENT.

14         **THE COURT:**  WHAT I AM SAYING IS THAT THERE IS NO

15   PROCESS WHERE, IF THIS WAS A CIVIL CASE, THEN WE WOULD HAVE A

16   MOTION FOR SUMMARY JUDGMENT WHERE THE COURT WOULD REVIEW THEIR

17   UNDERLYING ADMISSIBLE EVIDENCE AND MAKE AN ASSESSMENT ABOUT

18   WHETHER OR NOT THAT MET A BURDEN OF PROOF.  THAT DOESN'T HAPPEN

19   IN CRIMINAL CASES.

20         WE HAVE HERE IN CRIMINAL CASES, WE HAVE THE

21   ALLEGATION.  IF THEY CAN PROVE IT, THEN YOU ARE GOING TO GO --

22   JURY IS GOING TO GET THE CASE.  IF THEY CAN'T PROVE THIS AT

23   ALL, IT DOESN'T GO TO THE JURY.  BUT UNTIL THEN, I DON'T KNOW

24   THERE IS ANY MOTION FOR SUMMARY JUDGMENT.  WHAT YOU ARE TALKING

25   ABOUT IS A SUMMARY JUDGMENT MOTION WHERE YOU ARE SAYING, WELL,

1   THEY DON'T HAVE A PIECE OF EVIDENCE THAT SHOWS THAT THERE WAS A

2   REPRESENTATION THAT WE ARE GOING TO GIVE YOU THIS MONEY BACK IF

3   YOU DON'T GET A DEDUCTION.

4           **MS. LEARY:**  I SEE THAT, YOUR HONOR, BUT I AM THEN

5   ENTITLED TO, STILL UNDER RULE 14, I AM ENTITLED TO MY CLIENT'S

6   STATEMENTS --

7           **MR. CORRIGAN:**  YOU HAVE GOTTEN ALL OF YOUR CLIENT'S

8   STATEMENTS.

9           **THE COURT:**  ABSOLUTELY, BUT YOU ARE ENTITLED TO ALL

10  THE DISCOVERY THAT GOES ALONG WITH THIS.  AND WHAT IS BEING

11  SAID IS THAT THERE MAY BE SOME -- JENCKS ACT CUTS ACROSS THIS

12  BECAUSE THAT SAYS THERE'S A TIME FOR ALL THIS, RATHER THAN NOW.

13  THEY MAY HAVE IT, BUT THEY DON'T HAVE TO GIVE IT TO YOU UNTIL

14  LATER.

15          WHEN IS THAT LATER?  IF YOU PLAY THE JENCKS ACT OUT,

16  AFTER WE'VE ASSEMBLED THE JURY, WE GO THROUGH AND PUT PEOPLE ON

17  AND THEN WE ASK THEM:  WHAT ABOUT THIS?

18          BUT THEY ARE GOING TO GIVE YOU THAT MATERIAL BEFORE

19  THE TRIAL.  THEY GIVE YOU ALL THE JENCKS ACT MATERIAL BEFORE

20  THE TRIAL.

21          **MS. LEARY:**  I WOULD HAVE THOUGHT THAT I WAS

22  ENTITLED -- I UNDERSTAND JENCKS.  I WANT TO TALK ABOUT IT IN

23  TERMS OF MY DEFENDANT'S STATEMENTS PRIOR TO THAT.

24          **THE COURT:**  YOU ARE.

25          **MR. CORRIGAN:**  THIS IS A LITTLE FRUSTRATING TO THE

1    GOVERNMENT.  WE HAVE PRODUCED ALL OF THE STATEMENTS.  THE

2    STATEMENTS THAT WE ARE REQUIRED TO PRODUCE, THE STATEMENTS MADE

3    BY THE DEFENDANTS TO KNOWN LAW ENFORCEMENT PERSONNEL, WE HAVE

4    DONE THAT.

5             I DON'T THINK THAT THERE IS ANY -- THERE SHOULD BE

6    NO SURPRISES IN THIS CASE.  I HAVE SPOKEN REPEATEDLY TO THE

7    DEFENSE ABOUT THESE PARTICULAR ISSUES.  I HAVE REPRESENTED

8    ORALLY TO THEM THAT IN MARCH AND, IN FACT, IN THE OVERT ACT IN

9    MARCH --

10            **THE COURT:**  2003.

11            **MR. CORRIGAN:**  -- 2003 DEFENDANT WILLIAMS MET.

12            I HAVE REPRESENTED TO THE -- I HAVEN'T -- TO THE TWO

13   ATTORNEYS WHO WERE ON THE CASE PREVIOUSLY THAT THAT WAS A TIME

14   WHEN MR. WILLIAMS MADE MANY OF THESE ORAL REPRESENTATIONS TO

15   THE VICTIMS.  THEN THOSE ORAL MISREPRESENTATIONS WERE ALSO

16   FOLLOWED UP BY ADDITIONAL MISREPRESENTATIONS.

17            **THE COURT:**  PACKAGES WERE SENT WITH THE DOCUMENTS --

18            **MR. CORRIGAN:**  RIGHT, AND LETTERS, AND ALL THESE

19   OTHER THINGS.  THIS IS NOT A SURPRISE, AND THE DEFENSE KNOWS

20   THIS.

21            **THE COURT:**  I DON'T KNOW WHY YOU DON'T GET IT.  YOU

22   SHOULD -- YOU HAVE TO READ IT.

23            **MS. GREEN:**  WELL, NO, WE HAVE READ IT.  BUT SEE THE

24   QUESTION COMES BACK TO WHAT THE MATERIAL MISREPRESENTATIONS

25   ARE.

1     **THE COURT:**  YOU KNOW WHAT THEY ARE.  HERE IS WHERE

2     THEY ARE.

3            NUMBER ONE AND NUMBER TWO ARE ALLEGATIONS OF

4     REPRESENTATIONS THAT ARE ALLEGED IN THE OVERALL SCHEME THAT

5     THEY ARE SAID TO BE FRAUDULENT SCHEME, THAT THEY CARRY WITH

6     THEM THE NEED TO BE MATERIAL AND THE NEED TO BE RELIED UPON.

7            AND SO -- BUT THAT'S NOT A PART OF WHAT THEY HAVE TO

8     PLEAD, THAT IS WHAT THEY HAVE TO PROVE.

9            **MS. GREEN:**  I GUESS THE PROBLEM, YOUR HONOR, IF YOU

10    ARE THE RED CROSS, FOR INSTANCE, AND YOU SAY YOU'RE A TAX

11    EXEMPT ORGANIZATION AND IF YOU MAKE DONATIONS TO US, THAT IS

12    TAX DEDUCTIBLE, AND THEN SOME DONOR, CONTRIBUTOR DONATES

13    SOMETHING THAT DOES NOT GET THE TAX DEDUCTION FOR IT, IS THE

14    RED CROSS COMMITTED SOME SORT OF FRAUD?

15           **THE COURT:**  NO, THEY ARE NOT.  BUT YOU ARE LEAVING

16    OUT WHY DID THE DONATION BE MADE IN THE FIRST PLACE TO HE RED

17    CROSS?  DID THE RED CROSS OFFICIAL TELL THEM SOMETHING THAT

18    INDUCED THEM TO DONATE THIS?  GENERALLY NO.  BUT HERE, YES.

19    THAT'S THE ALLEGATION THAT THERE WAS A FALSE REPRESENTATION TO

20    INDUCE IT.  AND HERE IS THE DESCRIPTION OF WHAT THEY WERE.

21           AND NOW YOU LOOK AND SEE, YOU GET ALL THE DISCOVERY,

22    THEY GIVE YOU ALL OF THE DISCOVERY, YOU HAVE TO GET READY.  AND

23    THEN IF WE GET TO THE POINT, AND THE POINT I CAN SEE IS THAT IF

24    IT'S NOT RESOLVED BEFORE, AT THE POINT IN TRIAL WHERE THE

25    GOVERNMENT HAS COMPLETED THEIR CASE-IN-CHIEF AND THEN IT COMES

1    TO THE COURT AS, IN EFFECT, A SUMMARY JUDGMENT MOTION.  OKAY?

2              **MS. GREEN:**  ALL RIGHT.  IT WILL BE A LONG TRIAL.

3              **THE COURT:**  LET ME ASK YOU, FOR EXAMPLE, HERE IS ONE

4    THING.

5              IF YOU LOOK AT COUNT TWO.  AND THE COUNT TWO IS

6    AGAINST MR. WILLIAMS, AND COUNT TWO IS THAT ON JULY 21 OF 2003

7    HE SENT A LETTER ACKNOWLEDGING RECEIPT OF $6.6 MILLION

8    DONATION, AND THAT IS ALLEGED TO BE A PART OF A FRAUDULENT

9    SCHEME, WHICH IS DESCRIBED AS A SCHEME TO INDUCE A DONATION.

10             **MS. LEARY:**  OF COURSE, YOUR HONOR, IT OCCURS AFTER

11   THE DONATION IS MADE.

12             **THE COURT:**  THE LETTER DOES.

13             **MS. LEARY:**  A VERY LONG TIME AFTER, SO IT'S NOT

14   INDUCING ANYTHING AT ALL.

15             **THE COURT:**  BUT THAT'S THE FRAUDULENT SCHEME.  IT IS

16   A QUESTION OF WHETHER THE LETTER IS A PART OF THE SCHEME TO GET

17   IT ALL THE WAY UP TO MAIL FRAUD.

18             **MS. LEARY:**  IT IS.

19             **THE COURT:**  ON THE OTHER HAND, MY -- WHEN I READ

20   THIS, I DON'T KNOW WHAT THIS IS, WHO SENT IT, WHEN IT WAS, AND

21   WHAT WAS THE CONTENT, BUT THAT IS TAKEN CARE OF BY THE FACT

22   THEY HAVE GIVEN YOU THE LETTER IN DISCOVERY.  IS THAT RIGHT?

23             **MR. CORRIGAN:**  THAT'S CORRECT.

24             **THE COURT:**  THAT'S WHY -- IF YOU SAY TO YOURSELF,

25   WHAT IS THIS LETTER?  WHAT DOES IT SAY?  OKAY.  I GOT THE

| 1 | LETTER.  AND I LOOK AT THE LETTER.  YOU MAY SAY TO YOURSELF, |
| 2 | THIS ISN'T ANYTHING THAT IS A FURTHERANCE OF A SCHEME.  ALL |
| 3 | RIGHT.  THAT MEANS YOU WIN IF THAT'S WHAT THE FACT FINDINGS ARE |
| 4 | AT THE END. |
| 5 |         I DON'T KNOW WHAT THAT IS.  THE FACT FINDER DOESN'T |
| 6 | KNOW WHAT THAT IS UNTIL WE GET THERE.  BUT YOU NEED TO KNOW IT |
| 7 | IN MUCH MORE THAN JUST THIS PLEADING.  AND IF THERE WASN'T A |
| 8 | DISCOVERY PROCESS THAT GOT YOU THE LETTER, I WOULD THEN ORDER A |
| 9 | STATEMENT OF PARTICULARS, BUT YOU DON'T NEED IT IF YOU'VE GOT |
| 10 | THE LETTER. |
| 11 | **MS. GREEN:**  WHAT WE DO NEED TO KNOW IS THAT LETTER |
| 12 | REPRESENTS A DIFFERENT SCHEME. |
| 13 | **THE COURT:**  THAT'S UP TO THEM.  YOU DON'T -- YOU |
| 14 | KNOW THEY HAVE TO PROVE A SCHEME, BUT THEY DON'T HAVE TO TELL |
| 15 | YOU HOW THEY ARE GOING TO PROVE IT.  AND THEN WE GET TO THE |
| 16 | END, AND THEY SAY, WELL, YOU KNOW THE ORIGINAL SCHEME TO INDUCE |
| 17 | THE DONATION?  THAT ISN'T THIS ONE.  THIS IS ANOTHER SCHEME. |
| 18 | THIS HAS BEEN PLEADED AS PART OF THAT SCHEME. |
| 19 | **MS. GREEN:**  ALL RIGHT. |
| 20 | **THE COURT:**  OKAY.  SO, I THINK THE GOVERNMENT'S |
| 21 | POSITION IS CORRECT IN THE WAY THE FEDERAL WORLD WORKS IS THAT |
| 22 | THEY HAVE GIVEN YOU A PLEADING THAT DESCRIBES A FRAUDULENT |
| 23 | SCHEME AND THEY HAVE GIVEN YOU A DESCRIPTION OF THE SPECIFIC |
| 24 | MISREPRESENTATIONS THAT THEY RELY UPON, AND THEY HAVE GIVEN YOU |
| 25 | DISCOVERY ABOUT THIS, AND I THINK THAT GETS YOU IN A POSITION |

1    TO GO TO TRIAL.

2          WHETHER THEY CAN ULTIMATELY PLEAD AND PROVE THEIR

3    CASE TO GET PAST THE RULE 29 MOTION IS TO BE SEEN.  THAT'S AS

4    FAR AS I CAN SEE.

5          WHAT THIS DOES, AS YOU BECOME MORE FAMILIAR WITH

6    THIS, THIS IS ONE OF THOSE THINGS IS THAT I WILL LOOK AT THIS

7    AND I WILL GIVE YOU AN ORDER THAT ADDRESSES THE ISSUES THAT YOU

8    HAVE RAISED FOR THE MOTION FOR BILL OF PARTICULARS, BUT THEN IT

9    PROBABLY WILL BE A RULING THAT IS WITHOUT PREJUDICE IN THE

10   SENSE THAT THESE ARE THE KINDS OF DYNAMICS, THINGS AS YOU LEARN

11   MORE ABOUT IT, YOU MAY SAY THERE'S A FLAW HERE BECAUSE YOU HAVE

12   TO BE IN A POSITION, YOU ARE CORRECT, TO KNOW WHAT YOU ARE

13   DEFENDING AGAINST.

14         SO AS FAR AS I SEE IT, THIS PLEADING TELLS YOU WHAT

15   IT IS AND THE DISCOVERY THAT HAS BEEN DESCRIBED TO ME IS

16   SUFFICIENT TO PUT YOU IN A POSITION WHERE YOU KNOW WHAT YOU ARE

17   GOING TO TRIAL ON.

18         **MS. GREEN:**  WELL, I DON'T KNOW WHAT THE -- I DON'T.

19   I UNDERSTAND IT WAS PLED.  I UNDERSTAND THE COURT'S POSITION

20   AND I HAVE REVIEWED THE DISCOVERY AT LENGTH.  I WAS AWARE OF

21   THIS LETTER.  IT WAS GIVEN TO US WEEKS AGO.  IT WAS FAXED TO MY

22   OFFICE.  I KNOW EXACTLY WHEN I RECEIVED IT.

23         BUT THERE IS NO SPECIFIC MATERIAL MISREPRESENTATION

24   BY ANY PARTICULAR DEFENDANT INDUCING THE DONATIONS THAT I AM

25   AWARE OF, AND THAT'S THE PROBLEM.  I DON'T KNOW IF I AM

1    DEFENDING WHETHER --

2            **THE COURT:**  YOU ARE, I AM SORRY, BASICALLY GOING TO

3    SAY YOU ARE BETTER OFF WITH THAT BECAUSE THEY DON'T HAVE A CASE

4    IS WHAT YOU ARE TELLING ME.  IF THAT IS TRUE, YOU WIN, THEY

5    LOSE.

6            BUT AT THIS STAGE WE ARE TALKING ABOUT IS THIS

7    PLEADING, AND YOU ARE IN A POSITION TO SAY, WELL, I CAN SHOW

8    YOU, YOU DON'T HAVE ANYTHING THAT SUPPORTS THAT.  BUT YOU KNOW

9    WHAT IT IS THEY HAVE TO SUPPORT.  THAT'S WHAT YOU ARE DEFENDING

10   AGAINST.

11           OKAY.  SO THAT'S WHAT I AM GOING TO DO.  I AM GOING

12   TO TAKE IT UNDER SUBMISSION AND GIVE YOU AN ORDER, BUT I DON'T

13   THINK THAT THERE IS A NEED FOR A BILL OF PARTICULARS AT THIS

14   POINT.

15           **MS. GREEN:**  ALL RIGHT.  WE WILL BE HERE A LONG TIME,

16   YOUR HONOR.  WE WILL GET REALLY FRIENDLY.

17           **THE COURT:**  THAT'S FINE.

18           **MS. GREEN:**  THAT'S GOOD.

19           **MR. CORRIGAN:**  WE ARE GOING TO NEED DATES FOR THAT

20   MOTION TO DISMISS.

21           **MS. LEARY:**  I DON'T KNOW IF, ON MR. VANN'S BEHALF,

22   WHAT THE MOTION SCHEDULE, BUT FOR MY MOTION, YOUR HONOR -- IS

23   THE COURT CLOSED ON JULY 3RD?

24           **THE CLERK:**  YES.

25           **MS. LEARY:**  AND IF I WERE TO FILE BY NEXT FRIDAY, MY

1    SUPPLEMENTED MOTION, IS THERE TIME THEN TO HEAR IT ON

2    JULY 10TH?

3              **THE COURT:**  YES.

4              **MS. LEARY:**  AND FOR MR. CORRIGAN TO RESPOND THEN?

5              **THE COURT:**  YES.

6              **MR. CORRIGAN:**  WELL, HERE IS THE CONCERN THE

7    GOVERNMENT HAS, YOUR HONOR.  I WOULD LIKE MORE THAN ONE WEEK.

8    THIS IS A FACT --

9              **THE COURT:**  THERE WOULD BE MORE THAN ONE WEEK.  IF

10   YOU FILE -- TODAY IS THE 19TH.

11             **MS. LEARY:**  YES, SIR.

12             **THE COURT:**  IF YOU ARE SAYING YOU WILL FILE BY THE

13   26TH AND SAY TO THE GOVERNMENT THEY HAVE TO REPLY BY THE 3RD OF

14   JULY.

15             **MR. CORRIGAN:**  THAT GIVES ME ONE WEEK.  THE REASON I

16   AM ASKING FOR TWO IS --

17             **THE COURT:**  MAKE IT OUT TO THE 10TH AND WE'LL HAVE A

18   HEARING ON THE 17TH.

19             **MR. CORRIGAN:**  THAT'S FINE.

20             **MS. LEARY:**  MY CLIENT CAN'T BE HERE ON THE 17TH IS

21   THE PROBLEM, YOUR HONOR.

22             **THE COURT:**  24TH?

23             **MS. LEARY:**  OR ON THE 24TH, I BELIEVE.

24             **MR. CORRIGAN:**  MAYBE WE SHOULD CHECK.  WE HAVE NEW

25   COUNSEL, AND I DON'T KNOW IF SHE'S PREPARED AT THIS POINT TO

1    GET INVOLVED IN A SCHEDULE FOR THE FILING OF MOTIONS.  MAYBE WE

2    CAN DO IT ALL TOGETHER.

3           **MS. STIGLICH:**  I AM SORRY.  YOUR MOTION IS THE

4    MOTION TO DISMISS.  IT'S THE SUPPLEMENT ONE THAT WAS FILED AND

5    IT HAS NOTHING DO WITH THE OTHER DEFENDANTS.

6           **MS. LEARY:**  RIGHT.

7           **MS. STIGLICH:**  SO THIS IS THE NEXT LEVEL OF MOTIONS,

8    NEXT ROUND OF MOTIONS?

9           **THE COURT:**  THAT'S RIGHT.  IF YOU HAVE SOME MOTIONS

10   THAT APPLY TO YOUR INDIVIDUAL CLIENT, WE CERTAINLY CAN GET THAT

11   SCHEDULED, TOO.

12          **MS. LEARY:**  IS YOUR HONOR GONE THE 31ST?

13          THEN WE MOVE INTO SEPTEMBER BECAUSE OF EVERYBODY'S

14   SCHEDULE DURING THE SUMMER, YOUR HONOR.

15          **THE COURT:**  RIGHT.  I KNOW.

16          **MS. LEARY:**  IF I COULD -- I AM SORRY.

17          **THE COURT:**  THAT'S CORRECT.  SO I THINK WE HAVE TO

18   TRY TO GET YOUR MOTION HEARD BEFORE WE HIT THAT.  WE SHOULD BE

19   ABLE TO FIGURE OUT HOW TO GET YOUR MOTION HEARD IN JULY.

20          **MR. CORRIGAN:**  THAT'S FINE.  THE GOVERNMENT IS

21   AVAILABLE.  I AM ASKING FOR MORE THAN ONE WEEK.

22          **THE COURT:**  OKAY.

23          **MS. LEARY:**  WELL, I CAN BE HERE AND MY DEFENDANT --

24   MY CLIENT CAN BE HERE ON THE 31ST OF JULY.

25          **THE COURT:**  OKAY, THAT'S FINE.  11:00 O'CLOCK.  WILL

1   BE THE NEXT DATE.  WE'LL CONTINUE THE HEARING ON YOUR MOTION TO

2   JULY 31ST AT 11:00 O'CLOCK.

3           **MS. GREEN:**  BUT --

4           **THE COURT:**  IN THE MEANTIME, WE ALSO SHOULD HAVE AT

5   THE SAME TIME THAT SHOULD BE A STATUS CONFERENCE.  IN THE

6   MEANTIME WE WILL DO A RULING ON YOUR MOTION FOR BILL OF

7   PARTICULARS.  AND WE SHOULD BE ABLE TO DISCUSS ON THE 31ST

8   WHERE WE ARE GOING TO SET THIS, TRIAL SETTING, AND WHERE WE GET

9   THERE.

10          AS FAR AS MR. VANN IS CONCERNED, IF YOU HAVE SOME

11  MOTIONS, WE OUGHT TO FIGURE OUT WHETHER WE CAN PUT THOSE IN AND

12  HEAR THOSE ON THE 31ST.

13          **MS. GREEN:**  WELL, YOUR HONOR, THEN I HAVE A PROBLEM

14  BECAUSE JULY 31ST I AM OUT OF THE COUNTRY AND I WILL BE OUT OF

15  THE COUNTRY FOR THE NEXT THREE WEEKS.  SO IF IT'S A MOTIONS

16  HEARING, IF IT'S A MOTIONS DATE FOR --

17          **THE COURT:**  MOTIONS DATE FOR THE OTHER TWO

18  DEFENDANTS.  YOU DON'T HAVE TO BE HERE.  THEY CAN REPRESENT

19  YOU.  BUT IT WOULD ONLY BE A STATUS CONFERENCE FOR YOUR

20  DEFENDANT BECAUSE WE WOULD HAVE A HEARING ON IT.

21          WHAT WE CAN -- WE WILL BE DOING IS DISCUSSING, YOU

22  ALL OUGHT TO BE DISCUSSING ULTIMATELY HOW TO RESOLVE ALL THIS

23  AND WHEN WE CAN DO THAT.  AS FAR AS YOUR MOTION IS CONCERNED,

24  IT IS GOING TO BE RESOLVED NOW AND I'LL GIVE YOU AN ORDER.

25          **MS. GREEN:**  AS THE COURT MAY RECALL, THIS WAS A

1   TWO-TIERED MOTION PROCESS.  I'M NOT SURE THAT BASED ON THE

2   COURT'S RULING THERE ISN'T ANOTHER MOTION.  HOWEVER, I WILL --

3          **THE COURT:**  THAT'S PERFECTLY ALL RIGHT.  SEE, I HAVE

4   NEVER FIGURED OUT A WAY THAT I CAN ACTUALLY STOP DEFENSE

5   COUNSEL FROM FILING MOTIONS.

6          **MR. CORRIGAN:**  ORDER IT.

7          **MS. GREEN:**  MANY TRIED.

8          **MS. LEARY:**  YOU TRIED TO DO THAT, YOUR HONOR?

9          **MS. STIGLICH:**  BEFORE WE INK THE 31ST, I HAVE COURT

10   IN NEVADA ON THE 31ST.  IF IT WAS A STATUS CONFERENCE FOR MY

11   CLIENT ON THAT DAY, I'D CERTAINLY SEND MR. HINCKLEY AND HAVE

12   HIM BE PREPARED WITH MY CALENDAR.

13          I THINK THERE MAY BE SOME MOTIONS ON BEHALF OF

14   MR. VANN, BUT IF THE HEARING DATE IS THE 31ST, QUITE SIMPLY, I

15   WILL BE UNAVAILABLE FOR THAT.

16          **THE COURT:**  OKAY.  WE DON'T HAVE TO HEAR YOUR

17   MOTIONS ON THE 31ST.

18          **MS. STIGLICH:**  PERFECT.

19          **THE COURT:**  I WAS TRYING TO GET IT SO THAT WE CAN

20   MINIMIZE ALL THE APPEARANCES.

21          **MS. LEARY:**  YOUR HONOR, IF THE COURT WOULD CONTINUE

22   TO WAIVE MY CLIENT'S APPEARANCE, WE CAN GO FORWARD ON THE 24TH.

23   IN THE EVENT THAT IT COMES TO AN EVIDENTIARY HEARING AND YOUR

24   HONOR NEEDS HIM HERE, THEN WE WOULD HAVE TO HOLD THAT --

25          **THE COURT:**  WE CAN SCHEDULE THAT.  THAT IS THE WAY

1    TO DO IT.

2              WE'RE NOT GOING TO GO TO THE 31ST, WE WILL DO IT THE

3    24TH.  SO IT WILL BE THE 24TH AT 11:00 O'CLOCK.  AND YOUR

4    CLIENT COULD CONTINUE TO FILE A MOTION FOR NONAPPEARANCE, BUT

5    AT THAT TIME WE WILL DISCUSS WHETHER OR NOT WE NEED AN

6    EVIDENTIARY HEARING.  IF WE DO, THEN OBVIOUSLY WE WILL NEED TO

7    SET IT SO YOUR CLIENT CAN BE HERE.

8              WE WILL MAKE IT A STATUS CONFERENCE FOR THE REST OF

9    THE DEFENDANTS.  AS FAR AS MR. VANN IS CONCERNED, IF YOU ARE

10   READY TO FILE ANY MOTIONS, I WOULD LIKE TO HAVE IT HEARD ON THE

11   24TH.  IF NOT, YOU SHOULD REPORT ON THE 24TH WHAT MOTIONS YOU

12   INTEND TO FILE, AND WE WILL SCHEDULE THEM.

13             **MS. STIGLICH:**  I WILL, YOUR HONOR.

14             **MS. GREEN:**  AS WILL I YOUR HONOR.

15             **THE COURT:**  ALL RIGHT.  WE WILL CONTINUE THIS MATTER

16   UNTIL JULY 24TH AT 11:00 O'CLOCK.

17             **MS. GREEN:**  OKAY.

18             **THE COURT:**  I WILL FIND IN THE INTEREST OF JUSTICE

19   BECAUSE OF THE PENDENCY OF THE MOTIONS AND FOR THE PREPARATION

20   OF EFFECTIVE REPRESENTATION AND CONTINUITY OF COUNSEL, THERE

21   WILL BE EXCLUDABLE TIME UNTIL JULY 24TH.

22             **MS. GREEN:**  COULD MR. WILLIAMS' APPEARANCE BE

23   WAIVED?  HE --

24             **THE COURT:**  YOU CAN FILE WHAT YOU WANT WITH RESPECT

25   TO THAT.  DO IT BY WAY OF A WRITTEN SUBMISSION.

1          **MS. GREEN:**  THANK YOU, YOUR HONOR.

2          **MS. LEARY:**  THEN, YOUR HONOR, FOR MY SUPPLEMENT, IF

3   I CAN FILE A WEEK FROM TODAY, AND THEN MR. CORRIGAN WILL FILE

4   ON THE 10TH.

5          **THE COURT:**  TWO WEEKS AND WE'LL HAVE A HEARING ON

6   THE 24TH.

7          **MS. LEARY:**  AND REPLY ON THE 17TH BY THE DEFENSE.

8          **THE COURT:**  THAT'S FINE.

9          **MR. CORRIGAN:**  THANK YOU.

10         **THE COURT:**  ALL RIGHT.

11         **MS. LEARY:**  THANK YOU, YOUR HONOR.

12         **MS. GREEN:**  THANK YOU, YOUR HONOR.

13

14             (PROCEEDINGS CONCLUDED AT 12:00 P.M.)

15

16

17

18

19

20

21

22

23

24

25

### CERTIFICATE OF REPORTER

I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS IN CR-08-0244 DLJ, UNITED STATES V. JOSEPH WILLIAMS, WILLIAM LITTLE, JR., AND KEITH VANN, PAGES NUMBERED 1 THROUGH 30, WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

THE INTEGRITY OF THE REPORTER'S CERTIFICATION OF SAID TRANSCRIPT MAY BE VOID UPON REMOVAL FROM THE COURT FILE.

/S/ DIANE E. SKILLMAN

DIANE E. SKILLMAN, CSR 4909, RPR, FCRR